OPINION OF THE COURT
Robert W. Doyle, J.
This motion by New York Life Insurance Company, a nonparty to the above-captioned personal injury action, for an order permitting it to intervene as a party plaintiff and for other relief is decided as follows:
The above-captioned action arises out of a motor vehicle accident which occurred on January 6, 1992. Plaintiff, Holly Niemann, then agé 14, was one of three passengers in an automobile driven by defendant, Joseph N. Luca, Jr. The Luca vehicle went out of control after it passed over the crest of a hill on a roadway owned and/or maintained by defendant, Town of Smithtown. Defendant, Steven Julia, was backing his car into the driveway of residential premises situated on the downward slope of the subject hill. After passing the crest of the hill, the Luca vehicle allegedly swerved left to avoid contact with the Julia vehicle and then veered out of control and struck a tree.
Plaintiff, Holly Niemann, suffered severe personal injuries in the accident and together with her mother commenced this action to recover damages from each of the above-named defendants. Plaintiffs’ action was subsequently joined for trial with three other actions commenced by other occupants of the Luca vehicle. However, one of those actions has been discontinued. The three remaining actions are next scheduled to appear on this court’s ready-day TAP calendar on June 11, 1996.
By notice of motion, returnable May 6, 1996, the New York Life Insurance Company, which has paid some $403,000 in medical insurance benefits to the injured plaintiff, requests an order permitting it to intervene in this action and to serve its complaint for declaratory relief upon the defendants within 20 days of the granting of its motion. In support thereof, New York Life asserted that the injured plaintiff was a covered person under a group health insurance plan affording coverage to her father, a long time employee of New York Life. As a result, New York Life paid out some $403,703.39 in medical benefits to the injured plaintiff. New York Life further asserted that pursuant to the terms of its health insurance policy, *1025 it was granted a contractual right of subrogation by its insured. In the proposed complaint attached to its moving papers, New York Life, as plaintiff/intervenor, seeks a judgment against defendants Luca, Julia and the Town of Smithtown declaring that (1) defendant New York Life is subrogated to the rights of Holly E. Niemann under the Group Insurance Plan 6-1600 issued to the plaintiff’s father in 1961; and (2) the defendants are obligated to pay New York Life all amounts paid or all amounts New York Life is obligated to pay for medical expenses as a result of the injuries suffered by the infant plaintiff in the subject accident.
After opposing papers were served by the plaintiff and defendants, Luca and the Town of Smithtown, New York Life submitted a supplemental affidavit and memorandum of law. Therein, New York Life admitted that subsequent to the preparation of its original moving papers, it discovered that the contract of insurance affording coverage to the injured plaintiff did not contain an express subrogation provision in favor of New York Life and its reliance on the existence of any contractual right of subrogation was misplaced. Nevertheless, New York Life urges that its motion be granted upon the ground that New York Life’s right of subrogation is equitable rather than contractual in nature.
The subrogation rights of insurers have been the subject of several recent decisions of the Court of Appeals. In Federal Ins. Co. v Andersen & Co. (75 NY2d 366 [1990]) and in Winkelmann v Excelsior Ins. Co. (85 NY2d 577 [1995]), the Court explained that unlike contractual subrogation, where the insurer / subrogee’s rights are defined in the contract between it and the insured/subrogor, the right of an insurer to recover from third persons legally responsible for the loss is equitable in nature and arises independently of any contract. Consequently, an insurer who has paid the policy limits to its insured possesses the derivative and limited rights of the insured and may proceed directly against the negligent third party to recoup the amount paid. This is so even though the insured’s claimed losses were not fully covered by the proceeds of the policy. In both cases, the Court sustained the rights of insurers, each of whom paid their insureds the full amount under their respective policies, to proceed against third-party tortfeasors responsible for the loss even though the insured’s claims against the third-party tortfeasors, including those for uninsured losses, had not yet been resolved.
The Court expressly stated, however, that an insurer may not seek equitable subrogation against its own insured where *1026 the proceeds of insurance plus the insured’s recovery from the negligent third party fall short of making the insured whole. This rule is based upon the nature of the relationship between the insurer and the insured: if the loss of one of the two must go unsatisfied, it should be the insurer who bears such loss since it is has been paid to assume the risk of such loss. Thus, where the sources of recovery ultimately available are inadequate to fully compensate the insured for its losses, then the insurer — who has been paid by the insured to assume the risk of loss — has no right to share in the proceeds of the insured’s recovery from the tortfeasor (Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995], supra).
In Teichman v Community Hosp. (87 NY2d 514 [1996]), a case more factually similar to the one at bar, the Court of Appeals permitted a health insurer, who provided medical benefits to an infant plaintiff, to intervene in the proceedings to compromise the claims of the infant plaintiff interposed in a medical malpractice action against the third-party tortfeasors. The Metropolitan Life Insurance Company, the medical insurer, sought intervention to pursue its contractual right to a refund of amounts expended on behalf of the infant plaintiff, which right was conferred upon it under the terms of the health insurance policy affording coverage to the infant plaintiff. Although the Court found that the contractual right of reimbursement did not give rise to a lien in favor of MetLife, it granted MetLife’s motion to intervene in the compromise proceedings for the purpose of asserting its contractual right to be reimbursed for all past and future medical expenses it paid or was liable to pay under the terms of its health insurance policy. The Court thus permitted an insurer, whose subrogation rights rested upon a claim of contractual reimbursement, to assert a right of recoupment against the past and future medical expenses, if any, that were included in the settlement obtained by the insured from the third-party tortfeasors even though (1) there was no determination that the sources of recovery ultimately available were adequate to fully compensate the insured for all of its asserted losses; and (2) the insurer had not paid the full limits of its policy (cf., Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995], supra).
Here, the health insurer of the injured plaintiff seeks intervention in the injured plaintiff’s personal injury action, as her equitable subrogee, to recoup past and future medical expenses which the third-party tortfeasors are adjudged liable to pay under the terms of any settlement or by verdict. To grant *1027 such application, the court must be satisfied that: (1) New York Life’s equitable subrogation rights, if any, would be adversely affected if intervention were not allowed; (2) common questions of law and fact exist; and (3) no prejudice would result if the application were granted.
New York Life’s asserted claims for recoupment of all past paid and future medical benefits which the defendants may be required to pay pursuant to a jury verdict rendered against the defendants are without merit. CPLR 4545, the collateral source rule, mandates that in the event that a jury awards a plaintiff damages for costs and expenses which have been or will be replaced or indemnified by collateral sources, all such reimbursed costs and expenses must be "set off” against the amounts awarded by the jury. Application of the rule here would thus preclude the plaintiffs from recovering from the defendants all costs and expenses that have been replaced or indemnified by any collateral source and those which are reasonably certain to be replaced or indemnified in the future from any collateral source, less the cost of such reimbursed collateral source payments incurred by the plaintiffs. The medical benefits previously provided to the infant plaintiff by New York Life and those which it is liable to pay in the future (less the cost of any premiums paid for such insurance) are clearly collateral source payments within the contemplation of CPLR 4545.
As equitable subrogee of the plaintiffs, New York Life stands in the shoes of its insureds and its rights to proceed against the defendants, being derivative in nature, are limited to such rights as the plaintiffs would have had against such defendants (Federal Ins. Co. v Andersen & Co., 75 NY2d 366 [1990], supra). Since the plaintiffs have no right to recover a judgment entered on a verdict awarding damages for past and future costs and expenses that have been or will be reimbursed from collateral sources, New York Life has no viable claim to recoup the value of the medical benefits it has provided or will provide in the future to the infant plaintiff which are the subject of a damages award by the jury. New York Life’s motion to intervene in this action for the purpose of pursuing its equitable subrogation rights against the defendants during the trial of this action or in the postverdict hearings contemplated by CPLR 4545 is thus denied.
However, it is now clear that the collateral source rule is inapplicable to personal injury claims which are resolved by settlement, rather than by verdict (Teichman v Community *1028 Hosp., 87 NY2d 514 [1996], supra). The plaintiffs are thus not precluded from recovering, under the terms of any settlement struck with one or more of the defendants, monies paid in satisfaction of the plaintiffs’ claims for medical expenses. As the plaintiffs’ equitable subrogee, New York Life has the right to assert its claim for recoupment of covered medical expenses in an action against the third-party tortfeasor (Teichman v Community Hosp., 87 NY2d 514, 521-522 [1996], supra) and therein may recover, pro tonto, the value of the past medical expenses it provided its insured (see, Federal Ins. Co. v Andersen & Co., 75 NY2d 366 [1990], supra; Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995], supra). While the right of the insurer herein to assert its claims for recoupment of medical benefits in a separate action against the tortfeasors is clear, any questions regarding whether the insurer / subrogee’s right to recoup past medical expenses is affected by the fact that it has not fully discharged its obligations to its insured under the terms of its policy and whether it may recover future medical expenses, pro tanto, must be resolved by the Justice presiding over the declaratory judgment claim.
Having determined that a medical insurer may, as equitable subrogee of its insured, maintain a separate action against the third-party tortfeasor to recoup some or all of the covered medical benefits recoverable by the insured, by settlement, it follows then that the insurer / subrogee should be permitted to intervene in a pending action commenced by its insured against the third-party tortfeasor and therein assert such claims against the tortfeasors directly. That the insurer / subrogee’s right to recoup covered medical benefits included in any settlement struck between the insured might be adversely affected by the terms of a settlement entered into and/or submitted for final approval without input from the insurer is obvious, as the creative machinations of counsel aimed at defeating the subrogation rights of insurers are well documented (see, Kozlowski v Briggs Leasing Corp., 96 Misc 2d 337 [1978]). Nor is it disputed that common questions of law and fact abound and none of the parties opposing New York Life’s motion for leave to intervene have demonstrated that prejudice will result if the limited intervention permitted herein is granted.
Accordingly, that portion of the instant motion by New York Life for leave to intervene in this action to (1) assert its claims for recoupment of any medical expenses included in the terms of any settlement offered by the defendants and accepted by the Niemann plaintiffs in satisfaction of their claims; and (2) to *1029 participate in the proceedings for court approval of any such settlement is granted, subject to the following condition: that within 15 days of the date of this order, New York Life serves upon all parties a proper complaint for such declaratory relief against the defendants that is consistent with this order and comports with the requirements for such pleading contained in CPLR article 30. New York Life shall simultaneously serve all parties with a copy of the policy affording coverage to the plaintiff(s). The defendants shall serve their answers within 20 days after service of the complaint of the intervenor/plaintiff, New York Life Insurance Company. Unless otherwise agreed to by the parties, discovery shall be conducted only upon the granting of leave by the trial court.
In view of the foregoing, that portion of the instant motion by New York Life for leave to intervene in this proceeding is granted to the limited extent that New York Life may intervene herein for the purpose of asserting its equitable subrogation rights against the defendants to recoup covered medical expenses, if any, that are included in the terms of any settlement between the plaintiffs and the defendants and shall thus have the concomitant right to appear at and be heard on the proceedings brought to obtain court approval of such settlement. That portion of New York Life’s motion by which it seeks to intervene for the purpose of asserting its equitable right to subrogation against the defendants to recoup covered medical expenses awarded by a jury and to participate at the trial of this action and/or at the posttrial proceedings conducted pursuant to CPLR 4545 is denied. To the extent that the motion of New York Life seeks an order granting it summary judgment on those portions of the proposed complaint attached to its moving papers wherein New York Life seeks a judgment against the defendants in the amount of $407,703.39, such application is denied as premature.